JOSÉ CAPÓ FORTUÑO, ETC., Petitioner, *v.* TAX COURT, Defendant; TREASURER OF PUERTO RICO, now SECRETARY OF THE TREASURY, Intervener. (Two cases). JULIO T. RODRÍGUEZ, Petitioner, *v.* TAX COURT, Defendant; TREASURER OF PUERTO RICO, now SECRETARY OF THE TREASURY, Intervener.

Nos. 266, 267 and 269. Argued January 26, 1953.—Decided February 21, 1956.

*Juan A. Faría* for petitioners. *Víctor Gutiérrez Franco, Attorney General,* and *Arnaldo P. Cabrera, Assistant Attorney General,* for intervener, defendant in the main action.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

The petitioners in the above-entitled cases [1] paid to the Treasurer of Puerto Rico, now Secretary of the Treasury, a tax on certain pneumatic lubricators and air gauges which they introduced in the Island. These apparatuses, according to the Treasurer, are taxable pursuant to § 16, paragraph 20, of the Internal Revenue Law of Puerto Rico, as

---

[1] The three appeals in question were consolidated for decision in this Court, because the question of law involved is identical and there is no controversy as to the facts.

amended by Act No. 187 of May 13, 1948 (Sess. Laws, p. 520).

After the proper proceedings, the petitioners appealed to the former Tax Court praying for refund of the taxes paid. They argued that the collection of such tax was not proper because the lubricators and air gauges were operated by compressed air furnished by "a compressor independent of the apparatuses in question" and that the compressor could be operated by means of an electric motor as well as otherwise; and that neither the lubricators nor the aid gauges were accessories of the compressor, "but that their function is independent of the compressor and it is rather the compressor which is an accessory of the apparatuses in question."

The cases were submitted to the consideration of the court with the stipulation that the petitioners were the persons who suffered the burden of the tax—in the amounts agreed—and that 90 per cent of the service and filling stations that use pneumatic lubricators and air gauges, of the kind involved here, employ electric motors to furnish the air to the compressors. The trial court, after an inspection of a service station in Santurce to observe the operation of pneumatic lubricators and air gauges like those taxed in these cases, concluded that they were taxable under paragraph 20 of § 16 of the Internal Revenue Law because they were "accessories" which, pursuant "to the normal and predominant use" were employed "in connection with, or subordinate to" the compressor which, in itself, is an electrical apparatus subject to taxation by law and, consequently, dismissed the petitions for refund.

In the present appeals, the petitioners challenge the conclusions of law which we have already stated. We disagree.

The findings of the court—on which there is no controversy—are the following:

"A.—The pneumatic lubricator in the instant case is *not directly* operated by an electric motor. Nor is the air gauge

which is subject to the contested tax. Both are moved by energy accumulated in a specific quantity or weight of air stored under pressure in a receptacle or bell.

"B.—When a valve in any passage connected with the receptacle is opened, part of the potential energy, or pressure charge, of the compressed air becomes kinetic energy, or velocity charge, which is used throughout the mechanism of the gauge and the pneumatic lubricator, giving impulse to its parts.

"C.—*That is the way* in which both apparatuses are operated and they give the mechanical service for which they were manufactured.

"D.—Ninety per cent, that is, as much as 30 per cent in excess of the 60 per cent provided for in § 3 of the Internal Revenue Law to establish the 'normal and predominant use'· by consumers in Puerto Rico, as a group, use pneumatic lubricators and air gauges of the kind involved in this suit, *propelled by air which is compressed by electric motors.*"

Section 16 of the Internal Revenue Law provides that:

"There shall be collected and paid . . . an internal-revenue tax . . .

"*Electrical or Gas Apparatus.*—On every electrical or gas apparatus for whatever it may be used, and on all parts and accessories therefor, sold, transferred, used, or consumed in, or introduced into, Puerto Rico, a tax of fifteen (15) per cent on the selling price in Puerto Rico.

"*Provided,* That a machine or equipment whose principal work or objective is not accomplished by electricity or gas, shall not be considered in its entirety as an electrical or gas apparatus; but the additions, features, or devices operated by electricity or gas, and which perform secondary functions within or in connection with said machine or equipment, as well as the accessories for said additions, features or devices, shall be subject to the payment of the excise fixed by this subdivision.

"*Provided, likewise,* That in the case of the introduction into, or the acquisition, sale, use, or transfer in, Puerto Rico, of electrical or gas apparatus without having incorporated thereto the source of power by which they are to be operated, the determination of the fact as to whether or not they are electrical or gas apparatus, for the purpose of this tax, shall be made by the Treasurer of Puerto Rico on the basis of the

'predominant normal use' given thereto by the consumers as a group, and it shall be understood that there is a 'predominant normal use' if sixty (60) per cent or more of the number of acquirers of the apparatus in question operate them principally by electric or gas power.

"*Provided, further,* That excluding the current conducting wire, none of the materials for external installation shall be subject to the tax fixed by this subdivision.

"*Provided, finally,* That within the meaning of electrical or gas apparatus are included—but without it being understood as a limitation—, electric current generatig plants, dynamos, of all kinds, and compressors." Paragraph 20 (as amended by Act 187 of May 13, 1948, Sess. Laws, p. 520).

Section 3 of that same Act, as amended by Act No. 166 of May 3, 1949 (Sess. Laws, p. 522), insofar as pertinent provides:

"*Parts and Accessories.*—The term 'part', as used in this Act, shall be understood to be any article or object of a solid nature which, although it may be used independently, has been made, and according to its normal and predominant use by consumers as a group, to be attached or built-in, or to form an integral part of the constitution of, any apparatus or article taxed by this Act, regardless if said article or objects are exclusively for ornamental purposes.

"*Provided,* That there shall be understood to be 'normal and predominant use' when sixty (60) per cent or more of the consumers in Puerto Rico use said article or object to be attached or built-in, or to form an integral part of the constitution of, any apparatus or article taxed by this Act.

"The term 'accessory', as used in this Act, shall be understood to be any article or thing of a solid nature elaborated, manufactured or acquired in, or introduced into, Puerto Rico, for the purpose, according to the 'normal and predominant use', or being used in connection with, or subordinate to, any of the apparatus or articles taxed by this Act, even if said article or thing is reciprocally propelled or otherwise assisted by a main article.

"*Provided,* That the phrase 'in connection with', for the purposes of this Section, include, but without limitation, every function, service, or use given by or derived from, any article

or thing which assists, extends, amplifies, directs, sponsors, achieves, enhances, perfects, improves, increases, regulates, accelerates, slows, registers, or measures, the functioning, utility, production, or service of any other main article, both in the basic functions and in the features thereof, but there are excluded from the scope of said phrase the following articles:

. . . . . . . ."

As may be seen from paragraph 20 of § 16, the *compressors* are specifically included within the concept of electrical or gas apparatus subject to taxation. The compressors in these cases were propelled by electricity. The pneumatic lubricators and the air gauges were propelled, in turn, by the energy of the compressed air which the compressor furnished them through the corresponding passages. Although the pneumatic lubricators and the air gauges do not have their own source of energy, nor are they automotive or self-propelling, they are accessories, as that term is defined in § 3 set out above, since pursuant to the *normal and predominant use* they are employed "in connection with," or subordinate to the electric compressor.

The phrase "in connection with," according to § 3 above copied, includes "every function, service, or use given by or derived from, any article or thing which assists, extends, amplifies, directs, sponsors, achieves, enhances, perfects, improves, increases, regulates, accelerates, slows, registers, or measures, the functioning, utility, production, or service of any other main article, both in the basic functions and in the features . . ." That same Section establishes what shall be understood by "normal and predominant use," which requirement was fully complied with in this case since the parties stipulated that 90% of the pneumatic lubricators and air gauges in the Island are operated by means of compressed air from generators propelled by electricity. In fact, according to the *normal and predominant use,* the lubricators and air gauges are merely features by means of which an article taxed by the law—the electrical compressor

—exercises functions of a different nature; the lubricators causing a certain amount of oil to be discharged at a specific pressure so that it may penetrate different parts of the vehicles, and the air gauges indicating the air pressure within the tires. Certainly, those apparatuses are *accessories* within the scope given to that term by the statute because they are used *in connection with, or subordinate to*, an apparatus or article taxed by the law, as is the compressor. As such accessories they are taxable.

The judgments appealed from will be affirmed.

Mr. Justice Marrero did not participate herein.

